UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TONY MOORE,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00022 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Tony Moore ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 15), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on November 24, 2013. (Dkt. 8 at 14, 93).[1] In his application, Plaintiff alleged disability beginning August 2, 2011, due to several alleged impairments, including: compression fractures in the thoracic/lumbar regions; severe arthritis in his tailbone; limitations in his ability to stand, sit, lift, bend, twist, and walk; degenerative muscle disease in the bilateral legs; inability to sleep, be comfortable, and burning and throbbing; severe panic disorder; and loss of bladder control. (*Id.* at 14, 82-83). Plaintiff's application was initially denied on February 19, 2014. (*Id.* at 14, 97-108). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird in Buffalo, New York, on April 19, 2016. (*Id.* at 14, 48-81). On September 15, 2016, the ALJ issued an unfavorable decision. (*Id.* at 11-26). Plaintiff requested Appeals Council review; his request was denied on November 6, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 24, 2013, the application date. (Dkt. 8 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "old compression fractures of the T5 and T11 vertebral bodies, degenerative disc disease of the lumbar spine, and plantar fasciitis of the left heel." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of hypertension was non-severe. (*Id.* at 17). With respect to Plaintiff's representations that he suffered from depression, anxiety disorder, and panic disorder, the ALJ concluded that these were not medically determinable impairments. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listing 1.04 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 416.967(b), including lifting and carrying up to ten pounds frequently and twenty pounds occasionally, with the additional limitations that Plaintiff:

> can sit for a total of up to six hours; can stand or walk for a combined total of up to four hours; will be off task for one minute to stand, walk or stretch

after sixty minutes of sitting, and must sit for ten minutes after thirty minutes of standing or walking, all while remanding on task; is unable to operate foot controls with his left foot; can frequently climb ramps and stairs; can occasionally balance, stoop, kneel and crouch; cannot crawl or climb ladders, ropes or scaffolds; cannot be exposed to excessive cold or vibration; and cannot be exposed to hazards such as moving machinery or unprotected heights.

(*Id.* at 18). At step four, the ALJ found that Plaintiff does not have any past relevant work. (*Id.* at 24).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of assembler, parts inspector, and machine feeder. (*Id.* at 24-25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 25).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ erred in evaluating opinion evidence from nurse practitioner Theodore Nadelen (hereinafter "NP Nadelen"). The Court has considered this argument and, for the reasons discussed below, finds it to be without merit.

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv)

- 6 -

> whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 U.S. Dist. LEXIS 35143, at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not considered "acceptable medical sources," and their opinions are therefore not "entitled to any particular weight[.]" *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017) (quotations omitted). Nevertheless, an ALJ should consider evidence from "other sources," such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects. *See* SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006); *Glena v. Colvin*, No. 1:15-cv-00810 (MAT), 2018 U.S. Dist. LEXIS 19833, at *8-9 (W.D.N.Y. Feb. 6, 2018) ("Nurse practitioners are defined as 'other sources' under the Regulations; they do not constitute 'acceptable medical sources' . . . . Nevertheless, SSR 06-3p recognizes that 'other source' opinions are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.") (internal quotation omitted). An ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*,

698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").

Plaintiff began treating with NP Nadelen on February 20, 2015, after he was denied controlled substances at his prior provider. (Dkt. 8 at 20, 383). At his initial appointment with NP Nadelen, Plaintiff sought "medication refills," but had "no particular complaints." (*Id.* at 383). An examination was normal, and the records reveal that Plaintiff was "[e]mployed as an auto mechanic." (*Id.* at 383-84). NP Nadelen assessed several impairments, including musculoskeletal pain, hypertension, and depression. (*Id.* at 384-85). Plaintiff visited NP Nadelen again on March 25, 2015, complaining of bilateral hand swelling and back pain. (*Id.* at 392). NP Nadelen did not perform a physical examination of Plaintiff. (*Id.*). NP Nadelen assessed musculoskeletal pain, depression, hand swelling, and vitamin D insufficiency, and directed Plaintiff to follow up in six months. (*Id.* at 393). At an appointment with NP Nadelen on August 12, 2015, Plaintiff reported that he wanted to discuss anxiety medications for his anxiety/depression. (*Id.* at 394). Plaintiff also reported that he visited Dr. Singh on a referral for pain management, but that he was "of no help at all." (*Id.*). Plaintiff was not working at the time of the appointment. (*Id.*). An examination did not reveal any physical limitations, but Plaintiff presented with a flat affect and had minimal eye contact. (*Id.* at 395). NP Nadelen assessed depression, anxiety

disorder, and chronic pain. (*Id.*). Plaintiff was directed to follow-up in four to six weeks for his pain, depression, and medication increase. (*Id.* at 396).

Plaintiff saw NP Nadelen on September 17, 2015, to follow-up on his medication change and anxiety/depression. (*Id.* at 397). Plaintiff needed refills of Xanax, Naproxen, and Tramadol. (*Id.*). Plaintiff reported that an increase in medication (Fluoxetine) helped to improve his mood. (*Id.*). An examination was normal, with Plaintiff appearing "alert and oriented, happy, non-ill appearing, conversational." (*Id.* at 398). NP Nadelen assessed depression, anxiety disorder, and back pain, and noted that "[c]urrent pain management seems to be effective and possibly decreased due to better control of depression symptoms." (*Id.*). NP Nadelen directed Plaintiff to follow-up in three months for his pain and depression. (*Id.* at 399).

At an appointment with NP Nadelen on November 25, 2015, Plaintiff reported that he went to see a chiropractor, who "would not touch him," because he "did not want to make him be in more pain." (*Id.* at 400). Plaintiff requested "something" for his back pain because 'it is ruining my life.'" (*Id.*). Plaintiff reported that he had experienced intermittent low back pain for several months and that he had never been evaluated for this pain before. (*Id.*). He denied experiencing radiculopathy. (*Id.*). A physical examination of Plaintiff's back was mostly normal, with normal range of motion, motor strength, sensation, reflexes, and gait. (*Id.* at 400-01). Plaintiff had tenderness at the right and left paraspinals. (*Id.* at 401). NP Nadelen assessed a bulging disc, low back pain, and pain in

the thoracic spine, and referred Plaintiff to a spinal clinic.[2] (*Id.*). Plaintiff was directed to follow-up in six to eight weeks for his back pain. (*Id.*).

Plaintiff followed-up with NP Nadelen on January 6, 2016, following his referral to the spinal clinic. (*Id.* at 407). NP Nadelen noted that Plaintiff had three injections in the upper back that were beneficial, but his lower back pain was not addressed. (*Id.*). An examination of Plaintiff's back was normal (normal contour, range of motion, motor strength, sensation, reflexes, and gait), save for tenderness at the right and left paraspinals and sacroiliac joint. (*Id.* at 408). NP Nadelen assessed lumbago and referred Plaintiff to Unity Spine Center and to physical therapy.[3] (*Id.*).

Plaintiff visited NP Nadelen on January 27, 2016, to follow-up for his back pain. (*Id.* at 418). Plaintiff reported that his pain was "unbearable in both upper [and] lower back so much that he stays in bed alot of time." (*Id.*). Plaintiff reported some improvement, but he still experienced pain between his shoulder blades. (*Id.*). An examination of Plaintiff's back was normal (normal contour, motor strength, sensation, reflexes, and gait), save for tenderness at the right and left paraspinals, sacroiliac joint, and left rhomboid. (*Id.* at 419).

---

[2] On December 9, 2015, Plaintiff visited the Unity Spine Center. (Dkt. 8 at 402). Following an examination, Plaintiff was assessed with thoracic spine pain, midline low back pain with right-sided sciatica, lumbar radiculopathy, lumbar facet arthropathy, and trigger point shoulder region. (*Id.* at 404-05).

[3] A progress report submitted by Park Avenue Physical Therapy reveals that Plaintiff was evaluated on January 21, 2016. (Dkt. 8 at 410). Plaintiff was seen for a total of six visits. (*Id.*). He tolerated treatment well and demonstrated improved lumbar mobility in all directions, demonstrated gains in functional mobility, and was mostly able to successfully complete the treatment program without a reported increase in pain. (*Id.*).

Plaintiff's range of motion was "limited secondary to pain." (*Id.*). NP Nadelen assessed chronic pain and lumbago and referred Plaintiff to the Strong Pain Center. (*Id.*).

On March 7, 2016, Plaintiff underwent an imaging study of the lumbar spine on a referral from NP Nadelen. (*Id.* at 421). The study revealed "the vertebral heights and disc spaces are well-maintained," and "[t]here [was] no fracture or subluxation." (*Id.*). The impression was listed as "[u]nremarkable lumbar spine." (*Id.*).

In March 2016, NP Nadelen provided two medical opinions. The first opinion, which is a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addition Determination," was completed on March 17, 2016. (Dkt. 8 at 424-25). NP Nadelen opined that Plaintiff had no mental functional limitations but was "very limited" in his ability to walk, stand, sit, lift and carry, as well as in his ability to push, pull, and bend. (*Id.* at 425). Plaintiff had no limitations for seeing, hearing, and speaking, but he was "moderately limited" in using his hands, doing stairs or other climbing, and twisting. (*Id.*). NP Nadelen also noted that Plaintiff was unable to sit, stand, bend, push, or pull for long periods of time. (*Id.*). NP Nadelen opined that these restrictions were permanent. (*Id.*).

NP Nadelen submitted a "Physical Residual Functional Capacity Questionnaire" on March 31, 2016. (*Id.* at 429-33). NP Nadelen opined that Plaintiff's prognosis was poor and reported that Plaintiff had limited range of motion and walks with a limp. (*Id.* at 429). According to NP Nadelen, Plaintiff's pain or other symptoms would frequently interfere with his attention and concentration needed to perform simple work tasks, and he was capable of performing "low stress" jobs. (*Id.* at 430). As to Plaintiff's physical limitations,

NP Nadelen opined that Plaintiff could walk "0" city blocks without rest or severe pain; sit and stand for between twenty to thirty minutes before needing a break; and sit and stand/walk for about four hours in an eight-hour day. (*Id.* at 430-31). Plaintiff would need periods of walking during the workday of five to ten minutes every twenty to thirty minutes. (*Id.* at 431). NP Nadelen further opined that Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking, and he would need to take unscheduled breaks during the workday. (*Id.*). The frequency of these breaks would be "dependent on pain," and would be, on average, ten to fifteen minutes long. (*Id.*). At times, Plaintiff would need to use a cane or supportive device when engaging in occasional standing/walking. (*Id.*). Plaintiff could frequently lift and carry less than ten pounds; occasionally lift and carry ten pounds; rarely lift and carry twenty pounds; and never lift and carry fifty pounds. (*Id.*). Plaintiff could frequently look down, turn his head right or left, look up, and hold his head in a static position. (*Id.* at 432). NP Nadelen further opined that Plaintiff could never climb ladders; rarely twist and stoop (bend); and occasionally crouch/squat and climb stairs. (*Id.*). Plaintiff had significant limitations for reaching, handling, and fingering. (*Id.*). Specifically, Plaintiff could grasp, turn or twist objects for fifty percent of the workday; use his fingers for fine manipulations for fifty percent of the workday; and reach overhead ten percent of the workday. (*Id.*). Finally, NP Nadelen opined that Plaintiff's impairments were likely to produce "good days," and "bad days," and on average, Plaintiff would be absent more than four days per month. (*Id.*).

The ALJ discussed both opinions in the written determination and afforded them "little weight," for the following reasons: NP Nadelen was not an acceptable medical

source; his opinion regarding Plaintiff's functional limitations was not supported by objective evidence, including his own findings from his last appointment with Plaintiff prior to completing the forms; his opinion was inconsistent with Plaintiff's reported ongoing work activity[4]; and his opinion was inconsistent with the level of treatment Plaintiff sought and required. (*Id.* at 23-24).

The Court has reviewed NP Nadelen's March 2016 opinions, as well as his treatment notes, and finds that the ALJ's weighing of NP Nadelen's opinions was proper and well-supported by the record. As an initial matter, as a nurse practitioner, NP Nadelen's opinions were not entitled to controlling weight. *Vincent v. Berryhill*, No. 16-CV-00527-A, 2018 U.S. Dist. LEXIS 170224, at *6 (W.D.N.Y. Oct. 2, 2018). All that is required is that the ALJ consider the opinion and, if he decides that the opinion is not entitled to any weight, that he explain that decision. *Id.* at *7. The ALJ discussed the length and nature of NP Nadelen's treatment of Plaintiff. (*See* Dkt. 8 at 22-20). Further, the ALJ discussed both of the opinions submitted by NP Nadelen and explained his decision to give those opinions only little weight. (*Id.* at 23-24). Among other things, the ALJ explained that the severe limitations assessed by NP Nadelen were not supported by the objective evidence, citing specifically to NP Nadelen's own treatment of Plaintiff through January 27, 2016. (*Id.*). As noted above, NP Nadelen's treatment notes reveal

---

[4] As explained in the written determination, Plaintiff's testimony and the medical records reveal that Plaintiff worked as a self-employed auto mechanic since 2011. (Dkt. 8 at 16). Some of Plaintiff's medical records reference that Plaintiff was employed as an auto mechanic in 2014 and 2015. (*Id.*). Despite these references to ongoing work activity, the ALJ found that, in the absence of reported earnings, Plaintiff's work activity did not amount to substantial gainful activity at step one of the sequential analysis. (*Id.*).

very little objective medical evidence of any severe limitations; rather, the notes reveal normal physical examinations, improvement with treatment, and normal imaging studies, and stand in stark contrast to the limitations assessed by NP Nadelen in March 2016. Although NP Nadelen's notes document Plaintiff's complaints of ongoing back pain, "subjective assertions of pain *alone* cannot ground a finding of disability." *Santana v. Comm'r of Soc. Sec.*, No. 17-CV-2648 (VSB) (BCM), 2019 U.S. Dist. LEXIS 9393, at *28 (S.D.N.Y. Jan. 17, 2019) (citation omitted). The ALJ's decision to afford NP Nadelen's March 2016 opinions only little weight was proper in this instance. *See Wilkes v. Colvin*, No. 6:13-cv-856 (GLS), 2015 U.S. Dist. LEXIS 251, at *11 (N.D.N.Y. Jan. 5, 2015) (ALJ's conclusion that opinion of nurse practitioner was entitled to "little weight" was "legally sound and supported by substantial evidence" because nurse practitioners are not acceptable medical sources, and her opinion was inconsistent with her own treatment notes).

Plaintiff contends that the ALJ erred by failing to provide valid reasoning for rejecting NP Nadelen's opinions that Plaintiff would need to walk every thirty minutes and shift positions at will, as well as his need for additional unscheduled breaks in an eight-hour day. (Dkt. 12-1 at 9). This argument fails. As explained above and by the ALJ in the written determination, NP Nadelen's opinions regarding Plaintiff's functional limitations are completely unsupported by his own objective medical findings. More specifically, nowhere in NP Nadelen's treatment notes is there any information supporting Plaintiff's inability to walk "0" city blocks without pain, his need to walk every thirty minutes and switch positions at will, his need to take unscheduled breaks of ten to fifteen

minutes in length, and the likelihood that he would be frequently off task and absent more than four days per month. Rather, NP Nadelen's treatment notes document a normal gait and improvement in his symptoms. (*See, e.g.*, Dkt. 8 at 398 (NP Nadelen noting that "[c]urrent pain management seems to be effective and possibly decreased due to better control of depression symptoms."); *id.* at 400-01, 408, 419 (Plaintiff had normal gait, including at his last appointment on January 27, 2016, before NP Nadelen's assessments)). Simply because the ALJ did not specifically identify every individual limitation assessed by NP Nadelen does not constitute error, particularly where the assessed limitations are conclusory and clearly contradicted by treatment notes. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'") (citation omitted).

Plaintiff further contends that because the ALJ did not adopt NP Nadelen's opinions regarding these activities, he substituted his lay opinion for NP Nadelen's competent medical opinion. (Dkt. 12-1 at 9-10). This argument is also meritless. Here, NP Nadelen was not the only source of opinion evidence regarding Plaintiff's physical functional limitations. As explained by the ALJ in the written determination, Abrar Siddiqui, M.D., a consultative examiner, also offered an opinion relating to Plaintiff's functional limitations, which the ALJ gave "great weight." (*See* Dkt. 8 at 23, 304-13). Dr. Siddiqui assessed "mild limitations" for Plaintiff's ability "to sit, stand, climb, push, pull, or carry heavy objects." (*Id.* at 306). Dr. Siddiqui's opinion directly supports the assessed RFC, which provides limitations for all of those functions, among other types of activities.

Further, the ALJ gave Plaintiff the benefit of adopting some of the limitations assessed by NP Nadelen, including time to switch positions between sitting, standing, and walking. In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* Simply because the ALJ did not adopt NP Nadelen's opinions regarding these limitations precisely (*i.e.*, in terms of duration or quantity) does not constitute error, particularly where such severe limitations are unsupported and conclusory. As is apparent from the written determination, the ALJ weighed all of the evidence in the record, including opinion evidence, Plaintiff's treatment with various medical providers, and Plaintiff's own statements and testimony, and arrived at an RFC that is supported by substantial evidence.

In sum, the ALJ thoroughly discussed and considered NP Nadelen's opinions, and the ALJ's reasons for affording those opinions little weight are proper and well-supported by the record. Under these circumstances, the Court finds no error in the ALJ's decision. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (noting that "the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources,'" as long as he "address[es] and discuss[es] the opinion").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 11, 2019
Rochester, New York